495 P.2d 1262

**Shirley J. LLOYD and Della C. Cook, Plaintiffs,**

**v.**

**THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE COUNTY, State of Utah, Defendant.**

**No. 12460.**

Supreme Court of Utah.

April 5, 1972.

David S. Dolowitz, of Salt Lake County Bar Legal Services, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., Salt Lake City, for defendant.

ELLETT, Justice:

The plaintiffs above named are the impecunious wives of men whose whereabouts are unknown. They petitioned this court for a writ of mandate in substance to compel the trial court to permit each plaintiff to obtain service on the missing spouse by mailing "Notice of the Action" to the last known address of each defendant. This we refused to do.

In the first place, "Notice of the Action" will not give jurisdiction over a defendant in any type of case. A summons must be served upon a defendant personally if he be within the confines of the State of Utah and not in hiding. If he be without the State or so conceals himself within the State that personal service cannot be had upon him, then jurisdiction is obtained by personal service outside of Utah or by publishing the summons in a newspaper having general circulation in the county wherein the action is pending.[1]

In the second place, even if a summons is mailed to a defendant at his last known address, no jurisdiction would be obtained, for there is no statute or rule of court providing for such procedure. The petition would require us to violate our own established law by directing the lower court to attempt to obtain jurisdiction in a manner unknown to our legal procedure.

The plaintiffs claim that they are denied due process of law by having to publish summons. They do not seem to care about due process of law insofar as their husbands are concerned. In cases such as these, the last known address is usually the present address of the wife. In cases of action by third parties against an absent husband, a summons sent to the wife's address would likely be relayed on to the absent spouse; but in cases of do-

---

1. Rule 4(f), U.R.C.P.

mestic suits, the mailing to the defendant at the plaintiff's address would likely give no notice whatsoever to the defendant. On the other hand, a summons published once a week for four successive weeks in a newspaper having general circulation in the county wherein the plaintiff resides would likely be seen by the defendant or by some acquaintance or relative of the defendant who would give notice of the pending matter to him.

Thus it is deemed in our procedure that publication better meets the requirements of due process of law than would merely mailing to the last known address.

Due process of law is said by Story to be: "Law in its regular course of administration through courts of justice."[2] Cooley says: "Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs."[3] Black's Law Dictionary, 4th Edition, p. 590, in defining the terms, has this to say: "They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the enforcement and protection of private rights."

Our law regarding the service of summons on nonresidents has remained practically unchanged since 1907, and thousands of cases have been determined under its provisions. For us to hold that a procedure so well established is unconstitutional would cast doubt on the validity of prior judgments granted thereunder and would create havoc with titles to a great part of the land of this State.

■ If our procedure is void as being contrary to some constitutional provision, then there is no procedure in existence for obtaining jurisdiction over absent defendants; and until the legislature by statutory enactment or this court under its rule-making power provides a constitutional procedure, no jurisdiction can be obtained over an absent defendant.

The Rules Committee of the State Bar has not recommended to this court that any change be made in our present procedure, and we see no need for making any. However, the plaintiffs appealed our decision to the Supreme Court of the United States, and our order denying the writ of mandate has been vacated, and we are directed to give further consideration to the matter in the light of what was said in the case of Boddie v. Connecticut, 401 U.S. 371, 91 S. Ct. 780, 28 L.Ed.2d 113 (1970).

We have reexamined Boddie v. Connecticut, supra, and are unable to see wherein

2.   3 Story, Const., 264, 661.

3.   Cooley, Const.Lim., 441.

that case governs the instant matter. There the impecunious plaintiff was not permitted to file her complaint with the court until she paid a filing fee of $45 together with an additional fee of $15 for the service of the papers upon the defendant.

In the instant matter each plaintiff has already filed her complaint without any fee being paid therefor, and the sheriff stands ready to serve any and all papers without cost to these plaintiffs. In fact, since March 10, 1892, Utah has permitted impecunious parties to file their papers without cost and to have the services of the sheriff free when needed. Thus we in Utah have for eighty years permitted what the court in Boddie ordered Connecticut to do.

The Boddie opinion says that if publication is to be had, an amount of forty or fifty dollars will be required. It is not clear from the opinion whether the clerk collects this additional amount and publishes the summons or whether it is to be paid by the plaintiff directly to a publisher.

While our statute requires the officers to perform services gratis for impecunious persons, there is no way to compel a newspaper to publish the summons without receiving compensation therefor. Surely Boddie does not intend to hold that there should be a special procedure for dissatisfied wives which would be denied to plaintiffs in other types of litigation wherein a defendant leaves this State before service can be had upon him.

If we should be compelled to allow these plaintiffs to evade our established law regarding service of summons in order that they might be successful in their desire for freedom from the matrimonial yoke, should not we also devise a procedure whereby they can have an investigator to secure evidence to insure the judgment which each so eagerly desires?

■ The matter before this court was and is a request for a writ of mandate to compel the *Third Judicial District Court* to perform an act. A writ of mandate will not lie to compel an office such as "Third Judicial District Court" to do an act; it acts directly on the person holding the office.[4] It will not serve the purpose of certiorari, appeal, or writ of error.[5]

■ We cannot order the lower court to make rules of procedure, for it has no power to do so.

■ The trial court properly refused to make an order that jurisdiction over the absent spouses could be obtained in a manner contrary to law. By denying that request, he acted on the matter; and if these plaintiffs think he erred in doing so, they

4. Bulloch County v. Ritzert, 213 Ga. 818, 102 S.E.2d 40 (1958); 52 Am.Jur.2d Mandamus § 9.

5. 52 Am.Jur.2d Mandamus § 8.

could have petitioned for an interlocutory appeal. Mandamus will not lie to compel an officer who has once acted to change his ruling.

We do not think the Boddie case requires us to grant the writ of mandamus requested, and we, therefore, respectfully decline to do so. The petition is denied.

CALLISTER, C. J., and TUCKETT, and CROCKETT, JJ., concur.

HENRIOD, J., does not participate herein.