293 So.2d 59 (1974)
Helen GRISSOM et al., Appellants,
v.
DADE COUNTY, Florida, and the State of Florida, Appellees.
No. 44178.
Supreme Court of Florida.
March 27, 1974.
*60 Robert F. Williams, Miami, for appellants.
Stuart Simon, County Atty., Jon I. Gordon, Asst. County Atty., and Richard M. Sepler, Asst. Atty. Gen., for appellees.
Don Peters, Gainesville, Asst. Professor of Law, University of Fla., and Larry Turner, Gainesville, Storefront Legal Aid Organization of Alachua County, for amicus curiae.
McCAIN, Justice.
This is an appeal from a decision of the District Court of Appeal, Third District, which initially passed upon the validity of Florida Statutes Sections 49.011(10) and 49.10 (1971) F.S.A. We have jurisdiction pursuant to Florida Constitution, Article V, Section 3(b)(1) F.S.A.
The appellant, Helen Grissom, is an indigent widow receiving $140 per month in Social Security benefits. Mrs. Grissom has been using these benefits for her own support and for the support of her adopted daughter, Helen. The appellant now desires to adopt Helen's sister Sarah. Sarah was born in Mrs. Grissom's home in 1959, and Mrs. Grissom obtained legal custody of the child and has cared for and acted in the parental capacity since the child's birth.
Since the whereabouts of the natural mother of Sarah is unknown, the appellant is required to publish a notice of suit directed to the natural mother pursuant to Section 49.011(10) Florida Statutes F.S.A. (1971). In Dade County, the publication of such a notice of suit costs between twenty-five and thirty dollars. The appellant contends that because of her indigency she is unable to pay this cost and is thus precluded from having her petition for adoption heard by the court solely on the basis of her lack of wealth.
She brought a class action for declaratory relief seeking either to have Dade County pay the cost of publication pursuant to Florida Statutes § 57.081 F.S.A. because she was indigent or a declaration that the statute was unconsitutional in its application.
A motion to dismiss was filed by the Intervenor State, which the circuit court granted with prejudice. The District *61 Court, in affirming the order of the trial court, 279 So.2d 899, stated:
"In her first point on appeal appellant contends that the provisions of F.S. § 49.011(10) and 49.10 F.S.A., which require publication to obtain jurisdiction over the natural mother in an adoption proceeding ... are unconstitutional as applied...."
"In essence, this appeal raises the following question: `Is it a fundamental right of the appellant and the class she seeks to represent to have the taxpayers of the state or county pay her publication costs?' We reply in the negative."
The question raised by this appeal is whether the provisions of Section 49.011(10) and 49.10, Fla. Stat., F.S.A., which require publication to obtain jurisdiction over the natural mother in an adoption proceeding when her whereabouts is unknown, are unconstitutional as applied to indigent persons, under the due process and equal protection provisions of the State and Federal Constitutions.
In Rainey v. Rainey, 38 So.2d 60 (1948), Mr. Justice Terrell, in speaking for this Court, stated:
"... In a democratic society like ours the administration of justice is not a chattel or commodity of the bar that it may traffic or barter with ad libitum. It is an attribute of sovereignty clothed with a vital public interest and we are commanded to administer it without `sale, denial or delay'. Section 4, Declaration of Rights, Constitution of Florida, F.S.A."
Under the facts of this case, the appellant has been precluded from court because she cannot afford the publication fee necessary to obtain jurisdiction over the errant natural mother. Considering the herculean endeavor this woman has accomplished over the last fourteen years in raising two children on the minimal income provided by Social Security, it is no wonder that she is unable to pay the publication cost. To a sense then, the appellant is precluded from our courts because she cannot "purchase jurisdiction" over the wayward natural mother.
In Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 113 (1971) the appellant, Gladys Boddie brought a class action on behalf of all female welfare recipients residing in Connecticut and seeking divorces, but prevented from bringing divorce suits by the Connecticut statutes requiring payment of court fees and costs for service of process as a condition precedent to access to the courts. A three-judge court dismissed the complaint for failure to state a claim (D.C., 286 F. Supp. 968) but the Supreme Court reversed, holding:
"... Our conclusion is that, given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a state from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages. (id. at 374, 91 S.Ct. at 784).
"... (I)n the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship. The requirement that these appellants resort to the judicial process is entirely a state-created matter. Thus we hold only that a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so." (id. at 383, 91 S.Ct. at 788).
However, as the appellees argue in this case, the decision in Boddie is restricted only to the facts in that case, i.e. the marriage-divorce situation. In United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L. *62 Ed.2d 626 (1973), the Supreme Court refused to hold a statute unconstitutional in its application when it denied access to the courts for an indigent who filed a voluntary petition in bankruptcy seeking discharge without payment of the fees as a precondition to such proceedings. In distinguishing Boddie from the facts in Kras, the Court stated:
"... The Boddie appellants' inability to dissolve their marriages seriously impaired their freedom to pursue other protected associational activities. Kras' alleged interest in the elimination of his debt burden, and in obtaining his desired new start in life, although important and so recognized by the enactment of the Bankruptcy Act, does not rise to the same constitutional level... .
"... In contrast with divorce, bankruptcy is not the only method available to a debtor for the adjustment of his legal relationship with his creditors. The utter exclusiveness of court access and court remedy, as has been noted, was a potent factor in Boddie... ." (id. at 445, 93 S.Ct. at 638).
In reading Boddie and its apparent restrictive language especially in light of the pronouncement in Kras, it becomes obvious that Boddie is limited to a class of actions where the State has exclusively made judicial process the only method of altering a fundamental human relationship; excepting financial and economic relationships.
The question therefore is whether adoption is exclusively a state created right which could be considered a fundamental human relationship.
To answer the first part of this question, Florida Statutes Section 63.021 F.S.A. provides:
"§ 63.021 Jurisdiction and Venue.  The circuit court shall have exclusive jurisdiction in all matters of adoption... ." (Emphasis supplied.)
There is no need for citing authorities for the mandatory language of this statute. The statute on its face shows the exclusiveness of the adoptive proceeding being vested in the state court and existing only by statute. In re Palmer's Adoption, 129 Fla. 630, 176 So. 537 (1937). The State in its brief admits to the fact that adoption is exclusively a state created right.
The right to legally have children and the right of marriage, although both statutorily created, have been held to be "basic civil rights of man". Skinner v. Oklahoma, 316 U.S. 535 at 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). The fundamental right to have children either through procreation or adoption is so basic as to be inseparable from the rights to "enjoy and defend life and liberty, [and] to pursue happiness, ..." Florida Constitution, Article I, § 2 F.S.A. (1968).
The purpose of adoption proceedings is to extinguish certain rights of the natural parents and to establish such rights in the adoptive parents. Petition of Gaban, 158 Fla. 597, 30 So.2d 176 (1947). In such cases there is no distinction between the dissolution of a marriage and a dissolution of a parent-child relationship. Society's need for a procedure to terminate a marriage is certainly no greater than society's need for a procedure whereby homes with parental relationships are provided for parentless children.
The merits of the appellant's right to adopt this child is clearly not the issue. What is at issue is her right of access to the courts to see if she is a fit person to adopt this child.
She is clearly challenging the right to invoke the jurisdiction of the court through the only method available statutorily. Fla. Stat. § 49.011(10), 49.10 (1971). The appellees cite Lloyd v. Third Judicial District Court, 27 Utah 2d 322, 495 P.2d 1262 (1972) as holding that Boddie does not require the state to pay the cost of publication. *63 However the facts alone in Lloyd clearly distinguish it from the case at bar. In Lloyd, the state paid all costs incumbent upon an indigent person seeking a divorce in order to obtain jurisdiction over the spouse whose whereabouts was unknown. In such cases the state provided an alternative means of obtaining jurisdiction, other than through publication. The appellants in Lloyd sought to create a new method of obtaining jurisdiction, that is by publication of a summons. The court there specifically held:
"We have reexamined Boddie v. Connecticut, supra, and are unable to see wherein that case governs the instant matter. There the impecunious plaintiff was not permitted to file her complaint with the court until she paid a filing fee of $45 together with an additional fee of $15 for the service of the papers upon the defendant.
"In the instant matter each plaintiff has already filed her complaint without any fee being paid therefor, and the sheriff stands ready to serve any and all papers without cost to these plaintiffs. In fact, since March 10, 1892, Utah has permitted impecunious parties to file their papers without cost and to have the services of the sheriff free when needed. Thus we in Utah have for eighty years permitted what the court in Boddie ordered Connecticut to do." at 1264.
Clearly the same cannot be said of Florida. The appellants herein cannot obtain jurisdiction and are being denied access to the courts in matters where fundamental human rights are involved. Even though the classification promotes a governmental interest, the state cannot choose a method of meeting the interest that unnecessarily burdens or restricts the exercise of fundamental rights. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).
Her ability to raise these children properly when in fact she cannot afford a $25-$30 publication cost goes to the merits but it is worthy to note that the appellant here has supported and raised these two children for at least fourteen years on a minimal income. Certainly her inability to pay for publication is, to say the least, an economically justifiable maternal decision.
The publication statutes are therefore unconstitutional as applied and the State should be required to pay the costs of publication in such cases as these. If, however, the cost in cases of this nature becomes excessive upon the treasury of this State, the Legislature should provide a less costly alternative method of obtaining jurisdiction.
For these reasons the decision of the District Court is reversed and remanded with directions to proceed consistently with this opinion.
It is so ordered.
ERVIN, DEKLE and CARLTON (Retired), JJ., concur.
ADKINS, C.J., and ROBERTS, J., dissent.
BOYD, J., dissents with opinion.
BOYD, Justice (dissenting).
I dissent.
The Florida Legislature has provided for payment of costs of filing suits and makes no provision for free filing by indigents. If the law is to be changed, it must be done by the Legislature as this Court has not been vested with Legislative powers.
It amazes me that Legal services of Greater Miami would spend hundreds of dollars of taxpayers' money to litigate this matter through Circuit, District and the Supreme Court fighting over a thirty dollar filing fee. It would seem to me more *64 logical to have raised the thirty dollars from a governmental or private charity than to have spent the time and money for same as shown by the record. Thousands of citizens, including this writer, would gladly have paid such cost if requested.