**In the Matter of Juan DEL MORAL ROD-RIGUEZ, a child under eighteen years of age.**

**Juan DEL MORAL and Josephine Del Moral, Appellants,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. 48417.**

Supreme Court of Oklahoma.

June 15, 1976.

Steven A. Novick, James H. Hiatt, Legal Aid Society of Oklahoma County, Inc., Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., of Oklahoma by James R. Barnett, Asst. Atty. Gen., for appellee.

HODGES, Vice Chief Justice.

The question presented for our determination is whether the provisions of the Oklahoma statutes which require publication to obtain jurisdiction over the natural mother, when her whereabouts are unknown, in an action to terminate her parental rights as a prerequisite to adoption proceedings are unconstitutional as applied to indigent persons under the due process and equal protection provisions of the state and federal constitutions.

The appellants, Juan and Josephine Del Moral, filed a verified petition in the Juvenile Division of the District Court of Oklahoma County seeking to terminate the parental rights of the natural mother of Juan Del Moral Rodriguez as a condition precedent to his adoption. Juan Del Moral is the natural father of the minor child. Because the whereabouts of the natural mother were unknown, an order authorizing service by publication in conformity with 10 O.S. 1971 § 1131 [1] was entered by the court. The court clerk of Oklahoma County requires a prepaid deposit of $25.00 for publication notice in all juvenile cases. Although they attempted for several weeks to obtain the money, appellants were unable to pay the deposit. After their efforts to secure the money were unsuccessful, appellants filed an affidavit in forma pauperis and a motion to tax costs of publication to the county court fund. The court, after reviewing the Oklahoma statutes, specifically 20 O.S.1971 § 1304(a)(b), [2] concluded that it was without authority to order the court fund to pay publication costs.

[1]. 10 O.S.1971 § 1131 provides:

A parent shall be given actual notice of any hearing to terminate his parental rights. The notice shall indicate the relief requested, and the hearing shall not be held until at least ten (10) days after the receipt of such notice, except with the consent of the parent. If the court finds that the whereabouts of the parent cannot be ascertained, it may order that notice be given by publication and a copy mailed to the last-known address of the parent. The notice shall be published once in a newspaper of general circulation in the county in which the action to terminate parental rights is brought, and the hearing shall not be held for at least ten (10) days after the date of publication of the notice. Where a parent has not received actual notice of the hearing at which he is deprived of his parental rights, the order depriving him of those rights shall not become final for a period of six (6) months after the hearing. Nothing in this section shall prevent a court from immediately taking custody of a child and ordering whatever action may be necessary to protect his health or welfare.

[2]. It is provided by 20 O.S.1971 § 1304(a), (b):

(a) Claims against the Court Fund shall include only such expenses as may be law-

In an attempt to obtain adequate alternative service of process, appellants' attorney of record took five certified copies of the notice by publication, with copies of the original petition and posted all five copies at five different and conspicuous places within Oklahoma County. A copy of the notice with petition attached was mailed also to the mother's last known address.

When the case came on for hearing, the court was advised of appellants' indigency and of the manner of service of process employed. The court then conducted a hearing to inquire into appellants' indigency, and found them to be indigent persons unable to pay the $25.00 costs of publication. The court also found the service of process made by appellants' attorney of record was not valid, because there was no statutory provision for such service, and that the court had no personal jurisdiction over the natural mother, Eufracia Rodriguez. Termination of parental rights was therefore denied.

The court did have jurisdiction to make a temporary order, without a formal adjudication, to protect the welfare of the child, pursuant to 10 O.S.1971 § 1131.[3] Testimony was taken and the court found that the welfare of the child would best be served by placing temporary custody of the child with the appellants.

The purpose of adoption proceedings is to extinguish the rights of natural parents and establish the rights in adoptive parents. The effect of adoption proceedings is a readjustment of a fundamental human relationship and to establish a family status at law. The relationship of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exist between the adopted child and the adoptive parents and the kindred of the adoptive parents.[4] The right to have children is one of the basic civil rights of man.[5] We find no distinction between the right of procreation of children and the adoption of children.

In the case before us the only statutory provision under which appellants may invoke the jurisdiction of the court in order to adopt a child is denied to them because of their indigency.

We believe *Boddie v. Connecticut,* 401 U.S. 371, 383, 91 S.Ct. 780, 788, 28 L.Ed. 2d 113 (1971) controls the question before us. In this case, a class action was brought on behalf of welfare recipients who were seeking divorces and because of their indi-

fully incurred for the operation of the court in the county. Payment of the expenses may be made after the claim therefor is approved by the district judge who is a member of the governing board of the Court Fund and either the local court clerk or the local associate district judge who is a member of said governing board.

(b) The term "expenses" shall include the following items and none others:

(1) principal and interest on bonds issued prior to January 1, 1968 (19 O.S.Supp. 1970, §§ 771 through 778, inclusive);

(2) compensation of bailiffs and part-time help;

(3) juror and witness fees and mileage, as well as overnight accommodation and food expense for jurors kept together as set out in 28 O.S.1961, Sections 81 et seq., except that expert witnesses who appear on behalf of the State of Oklahoma shall be paid a reasonable fee for their services from the court fund;

(4) office supplies, books of record, postage and printing;

(5) furniture, fixtures and equipment;

(6) renovating, remodeling and maintenance of courtrooms, judge's chambers, clerk's offices and other areas primarily used for judicial functions;

(7) judicial robes;

(8) attorney's fees for indigents in the trial court and on appeal;

(9) transcripts ordered by the court;

(10) necessary telephone expenses;

(11) any other expenses now or hereafter expressly authorized by statute.

3. 10 O.S.1971 § 1131, supra note 1.

4. *Ex parte Helscel,* 268 P.2d 287 (Okl.1954) 10 O.S.1971 § 60.16.

5. *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

gency were prevented from bringing divorce suits by the statutes which required payment of court fees and costs for service of process, including publication costs, as a condition precedent to access to the courts. The Court held:

"We do not decide that access for all individuals to the courts is a right that is, in all circumstances guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship. The requirement that these appellants resort to the judicial process is entirely a state-created matter. Thus we hold only that a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for so doing."

It should be noted that by a 5–4 decision of the Supreme Court in *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed. 2d 626 (1973), the application of *Boddie* is restricted to a class of actions where the state has exclusively made judicial process the only method of altering a fundamental human relationship and does not include financial and economic relationships.

We find no distinction between the dissolution of a marriage and the dissolution of a parent-child relationship. Both involve fundamental human rights, and both require the sanction of the courts to extinguish prior relationships. Society's need for a procedure to terminate a marriage is no more important than its need for a procedure to establish familial relationships. The Florida Court in *Grissom v. Dade County,* 293 So.2d 59, 62 (Fla.1974) considered this identical problem, and as in the instant case, the merits of the appellants' right to adopt the child was clearly not the issue. The issue is the right of access to the courts to see if they are fit persons to adopt this child. The Florida court decided the appellant could not be precluded from having her petition for adoption heard by the court because of her inability to pay the costs of publication to give notice to the natural mother. It determined that adoption is a fundamental legal right which the state could not statutorily restrict and that the state should be required to pay these costs.

Oklahoma, like Florida, provides only one method of service of process where the whereabouts of the natural parent are unknown. While we agree with the United States Supreme Court in *Boddie v. Connecticut,* supra, that service by publication is the method of notice least calculated to bring a potential defendant's attention to the pendency of judicial proceedings, and that perhaps in this case service at defendant's last known address by mail and posted notice would be equally as effective as publication in a newspaper, the statutes for substituted service in this state upon a natural parent whose whereabouts are unknown, do not provide for any other alternative than publication. Thus, the state by the structure of its rules denies the appellants the full access to the court which due process mandates. We therefore find the publication statutes as applied to indigents in proceedings to terminate parental rights as a condition precedent to adoption are unconstitutional, and that the state should be required to pay the costs of publication in cases of this nature until such time the legislature provides a less costly alternative method of obtaining jurisdiction.

REVERSED.

WILLIAMS, C. J., and DAVISON, LAVENDER, BARNES, and DOOLIN, JJ., concur.

IRWIN and BERRY, JJ., dissent.