OPINION OF THE COURT
Bertram R. Gelfand, S.
In this private placement adoption proceeding, movant, who is indigent, seeks reargument of the prior denial of her application for a direction to the Finance Administrator of the City of New York to pay the cost of the service by publication of the citation upon the natural mother whose whereabouts are unknown (see Matter of Caroline R., NYLJ, June 15, 1978, p 13, col 1). Service of process upon the natural mother is required in order to complete jurisdiction.
Movant, in support of her original application relied primarily upon the determination in Boddie v Connecticut (401 US 371) holding that it was a violation of the due process clause of the Constitution to deny a poor person access to the courts in a divorce proceeding because of an inability to pay the *115 necessary expenses to commence the action. This court denied the original application, after concluding that the private placement adoption that movant sought was not the only available procedure in New York by which the adoption could be achieved. (See Matter of Caroline R., supra.) Under these facts, the court concluded that the holding in United States v Kras (409 US 434) that the Government need not pay for the cost of access to the courts for indigent persons when there exist alternative avenues for relief was controlling.
Movant bases her application for reargument upon two decisions rendered by sister States, a letter obtained from the New York City Department of Social Services subsequent to this court’s original determination and unreported cases involving indigent petitioners seeking a change of name. The aforesaid material which was not presented upon the original application merits consideration. Accordingly, the motion for reargument is granted.
The additional law upon which petitioner relies upon reargument, which was neither cited nor considered when the matter was first determined, consists of the decision of the Supreme Court of the State of Florida in Grissom v Dade County (293 So 2d 59 [Fla]), and a determination of the Supreme Court of Oklahoma in Matter of Del Moral Rodriguez (552 P2d 397 [Okla]). The Grissom case (supra) was a class action in which an indigent widow sought to compel Dade County, Florida, to pay the costs of publication in an adoption proceeding on the basis that without such relief she would be unconstitutionally denied access to the courts because of her indigency. The Florida Supreme Court in a 4 to 3 decision reversed a denial of the application by two lower courts and held that adoptions involved a "fundamental human relationship” and that the adoption proceeding which petitioner was precluded from pursuing by not being able to afford to pay the cost of publication was "the only method available statutorily” under Florida law. It further noted that under Florida statutes, publication at the expense of a petitioner was an "exclusive precondition” to this "only method available”.
In Matter of Del Moral Rodriguez (supra) the Supreme Court of Oklahoma in a 6 to 2 decision reversed a trial court’s dismissal of an application similar to that in Grissom (supra). In the Oklahoma case, petitioners sought, for the purpose of facilitating the completion of an adoption, to terminate the *116 parental rights of a natural mother whose whereabouts were unknown. One petitioner was the natural father of the infant and the other was his wife. Petitioner, being unable to pay the required $25 cost of publication, sought to compel the payment from the county court funds. It was held that they were entitled to this relief since under the Oklahoma law the procedure being denied to them because of their indigency was "the only statutory provision under which appellants may invoke the jurisdiction of the court in order to adopt a child”.
It is noted that neither the majority opinion in Boddie v Connecticut (401 US 371, supra) nor the Florida or Oklahoma cases hold that the equal protection clause requires the government to pay the necessary expenses for an indigent person to gain access to the court. The Florida and Oklahoma cases are clearly in accord with the decision in Boddie v Connecticut (supra), to the extent that they hold that the due process clause mandates that an indigent person cannot be denied access to the court for lack of funds when the court proceeding is an "exclusive precondition to the adjustment of a fundamental human relationship.” These decisions are an extension of Boddie v Connecticut (supra) to the extent that they conclude that an adoption proceeding is an "adjustment of a fundamental human relationship” akin to a divorce proceeding.
It is not necessary to determine in the case at bar whether an adoption is such a "fundamental human relationship” unless and until it is determined that under the New York statutory framework, the private placement adoption sought by petitioner is the exclusive method by which the adoption could be achieved. Moreover, it is evident from the holding in United States v Kras (409 US 434, supra) that the Government need not pay an indigent’s expenses for court access where there is an alternate method for obtaining relief, even though such method is substantially different than that selected by the indigent. In United States v Kras (supra, p 445), the court in holding that the Government did not have to pay the filing fees for a bankruptcy proceeding stated that "[h]ow-ever unrealistic the remedy may be in a particular situation, a debtor, in theory, and often in actuality, may adjust his debts by negotiated agreement with his creditors.”
Petitioner apparently submitted the recently obtained letter from the Department of Social Services for the purpose of establishing that this court was in error when it concluded *117 that there was an alternate procedure that could be utilized to effectuate the adoption. This letter states that the Department of Social Services would not be a party to a private placement adoption and then reads as follows: "This is purely a private adoption matter, and even though the natural mother may have abandoned the child, the child does not fall under our jurisdiction.”
It is true that the Department of Social Services is not a party to a purely private placement adoption. However, this is not germane to the critical issue herein, which is whether an alternate procedure could be utilized pursuant to which the adoption could be achieved. Moreover, it is noted that this is not a classic private placement adoption because neither of the natural parents has consented to it. The child was apparently abandoned by her parents and left with movant. The child allegedly came into petitioner’s custody when the mother left her with. petitioner in 1967. This was apparently the last contact which the mother had with the child. The child’s father is unknown. Petitioner only has status to petition for a private placement adoption by dint of the court’s having, in 1973, granted her ex parte application to be appointed guardian of the child in the interest of assuring that some adult would be in the position to exercise responsibilities on behalf of the infant. The facts presented clearly place this child within the category of an infant abandoned by her parents in this jurisdiction. Commendable as it may be, the petitioner’s gratuitous incorporation of the infant into her family unit does not divest the Commissioner of Social Services of his overriding statutory responsibility for abandoned children. The Commissioner of Social Services clearly could have been made a party to the guardianship proceeding (see Matter of Caseres, 67 AD2d 630; Social Services Law, § 398, subd 2).
In order to cope with the circumstances here present, New York has adopted a specific statutory scheme for the freeing of abandoned children for adoption and their adoption by those who cannot afford the cost of adoption and the responsibility for raising the child involved. If it is in the best interests of the child, and petitioner is a proper person to adopt, she can become the adoptive parent without any cost whatsoever. Under New York law, movant need only legally transfer or „ surrender the care and custody of the child to the Commissioner of Social Services. If she pursued that course, rather *118 than a private placement adoption, the government would bear not only the burden of the procedure to free the child for adoption and assume the cost of adoption but would also, if appropriate, assist in providing for the child’s future care (Social Services Law, §§ 384, 384-a, 384-b, 450 et seq.).
It is possible that if movant utilized this alternate procedure that the Commissioner of Social Services might conclude that it would be in the best interest of the child that someone other than the movant adopt her. However, in any adoption proceeding, whether it be private placement or agency, the paramount concern is always the best interest of the child rather than the desires of one who might seek to adopt the child (Domestic Relations Law, §§ 114, 116; see, also, People ex rel. Ninesling v Nassau County Dept. of Social Servs., 46 NY2d 382). It must be presumed that if the best interest of the child would be promoted by being adopted by movant, the Department of Social Services would co-operate in achieving this goal.
That movant may prefer to proceed under the statutory provisions for private placement adoptions rather than the alternate procedures for adoption through agencies does not offer the court a constitutional basis for imposing upon the executive branch of government a cost which the Legislature has not otherwise imposed upon it by statute (United States v Kras, 409 US 434, supra). There is no discernible constitutional guarantee to each and every indigent that government must make available all the legal options open to those who are fortunate enough to have greater affluence. Where the Legislature and the executive branch in their wisdom have provided a statutory scheme under which indigents may adopt, it is not within the scope of the judicial function to alter, amend or extend this scheme in the absence of a clear constitutional mandate. No such mandate is here present. That such a mandate may be found by the courts of sister States under the particular statutory scheme which exist in those States is not controlling in determining whether the New York statute has a constitutional infirmity. It is a critical distinction that both the Florida Supreme Court and the Oklahoma Supreme Court found that their statutes offered no alternative to the indigent petitioners. The New York statutes do offer an alternative. It need not be an alternative that the petitioner prefers over other choices.
The court does not find of controlling significance on the *119 issues here presented that the Civil Court of the City of New York has in some instances mandated that the cost of publication in name change proceedings be paid by the Director of Finance from city funds. Accordingly, upon reargument, the court adheres to its original determination and the application is denied.