# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2025-1363
LT Case No. 10-2025-DP-28

_____

JANE DOE,

    Appellant,

    v.

JAMES UTHMEIER,
ATTORNEY GENERAL,

    Intervenor–Appellee.

_____

On appeal from the Circuit Court for Clay County.
Angela M. Cox, Judge.

Melissa Joy Armstrong, Assistant Regional Conflict Counsel, of
Office of Criminal Conflict and Civil Regional Counsel,
Tallahassee, and Hilda Griffis, Assistant Regional Counsel, of
Office of Criminal Conflict & Civil Regional Counsel, Green Cove
Springs, for Appellant.

James Uthmeier, Attorney General, Jeffrey Paul DeSousa, Acting
Solicitor General, Nathan A. Forrester, Chief Deputy Solicitor
General, Rajan K. Vasisht, Solicitor General Fellow, and Foster
H. Swartz, Solicitor General Fellow, Tallahassee, for Intervenor,
State of Florida.

May 14, 2025

PRATT, J.

Appellant ("Minor"), an unemancipated 17-year-old pregnant female, petitioned the circuit court for a judicial waiver so that she may consent to an abortion without notification to, or consent from, her father. After a hearing at which Minor testified, the circuit court found her testimony inconsistent and not credible, and it determined that she failed to establish entitlement to a judicial waiver. We affirm, and we certify a question of great public importance to the Florida Supreme Court.

**I.**

Florida law generally requires written parental consent before medical care or medicinal drugs may be provided or prescribed to a minor child. *See* § 1014.06(1), Fla. Stat. (2025) ("Except as otherwise provided by law, a health care practitioner . . . or an individual employed by such health care practitioner may not provide or solicit or arrange to provide health care services or prescribe medicinal drugs to a minor child without first obtaining written parental consent."). This requirement honors a "parental right[ ]": the right of a parent "to make health care decisions for his or her minor child, unless otherwise prohibited by law." § 1014.04(1)(e), Fla. Stat. (2025).

As with other medical procedures, parental notification and consent generally must be obtained before an abortion is induced or performed on a minor child. *See* § 390.01114(4)–(5), Fla. Stat. (2025).[1] However, when it comes to this parental right, Florida law treats abortion differently in one notable respect: it authorizes judicial waiver of the notification-and-consent requirements if a circuit court "finds, by clear and convincing evidence, that the minor is sufficiently mature to decide whether to terminate her pregnancy," § 390.01114(6)(c), or if the court finds, "by clear and convincing evidence[,] that the [notification of a parent or guardian

---

[1] The statute provides certain narrow exceptions to its notification-and-consent requirements other than a judicial waiver, but none of those exceptions is at issue here. *See* § 390.01114(4)(b), (5)(b).

is] not in the best interest of the petitioner," § 390.01114(6)(d).[2] This appeal arises from the denial of such a waiver.

## A.

On May 6, 2025, Minor petitioned the circuit court for judicial waiver of the parental notice-and-consent requirements to obtain an abortion. She asserted entitlement to waiver under both the maturity and the best-interest provisions of section 390.01114(6). At noon the next day, via Zoom, the circuit court held a hearing on Minor's petition. At the outset of the hearing, immediately after Minor was sworn, Minor's counsel attempted to proffer "certain things to the Court that I learned when I interviewed the mother [*i.e.*, Minor] earlier today."[3] After counsel spoke for approximately

---

[2] It also authorizes a judicial waiver "[i]f the court finds, by a preponderance of the evidence, that the petitioner is the victim of child abuse or sexual abuse inflicted by one or both of her parents or her guardian[.]" § 390.01114(6)(d). That provision is not properly at issue here. For the first time on appeal, Minor's counsel argues that the hearing testimony established that she is a victim of child abuse. That argument was not alleged as a basis for the petition, made at the waiver hearing, or otherwise presented below. Therefore, the argument is forfeited. In any event, on review of the record, we find scant evidence to support such an argument, much less the preponderance of evidence that the statute requires.

[3] Readers will note that our descriptions of counsel's attempted proffer, Minor's testimony, and the circuit court's questions are generic. That is intentional. Deciding this appeal does not require us to parse in our opinion the particularities of what was said below, and, mindful that we must protect Minor's identity and any confidential information that could be used to identify Minor, we recite the facts only at the level of detail we think necessary to explain the basis for the circuit court's decision and our disposition of Minor's appeal. *See In re Doe*, 370 So. 3d 703, 704 n.1 (Fla. 5th DCA 2023) ("Consistent with section 390.01116, Florida Statutes (2023), and Rule 9.147(f) of the Florida Rules of

two pages of transcript, the circuit court interjected, "Okay. So the statute requires that I . . . make findings regarding the maturity of the child [*i.e.*, Minor], so . . . she needs to testify . . . about these issues."

Minor then was examined by her counsel. After counsel finished her examination, the circuit court observed that Minor had been "here before the Court for this same type of petition 11 months ago," and the court asked Minor several questions. After listening to Minor's answers, the court noted several inconsistencies in Minor's testimonies at both hearings and probed those inconsistencies through further questions. The court finished its questions and confirmed that counsel had nothing further.

The circuit court then concluded the hearing by announcing its ruling:

> The issue is whether or not you should be allowed to terminate or make the choice to terminate your pregnancy without notification to a parent or legal guardian, so the issue for the Court is whether or not you have the maturity to make the decision without notifying a parent or a legal guardian. I find that you do not. You were in this position 11 months ago. The testimony that you gave me today is not credible with the testimony I've received from you before so I find that you do not have the requisite maturity to make the decision without a parent or legal guardian being involved in this process.

The court advised Minor of her right to an expedited appeal and promised to render its written order that same day, a promise that the court fulfilled.

---

Appellate Procedure, we recite only portions of the record that cannot be used to identify the minor.").

The circuit court's written order made findings as to each of the enumerated statutory maturity factors. While the court found that some of those factors weighed in Minor's favor, it found that several factors—Minor's emotional development and stability, her credibility and demeanor as a witness, her ability to accept responsibility, and her ability to assess the immediate and long-range consequences of her choices—weighed against a finding of maturity to consent to an abortion. The court's order memorialized the inconsistencies between Minor's testimony in the prior waiver hearing and her testimony in the present one, deemed her present testimony not credible, and ultimately found that Minor's non-credible testimony failed to establish clear and convincing evidence to support a maturity finding. It likewise found that Minor's non-credible testimony failed to establish clear and convincing evidence that parental notification was not in her best interest.

**B.**

We received Minor's notice of appeal on May 7, 2025, and our Clerk filed an acknowledgement of new case on May 8. We have a statutory obligation to rule within 7 days of receipt of the appeal, so we must rule by May 14. *See* § 390.01114(6)(b)2., Fla. Stat. ("An appellate court must rule within 7 days after receipt of appeal, but a ruling may be remanded with further instruction for a ruling within 3 business days after the remand."). The statute does not specify a consequence for a failure to timely rule, but Rule 9.147 of the Florida Rules of Appellate Procedure does. Rule 9.147 states that if we fail to "render [our] decision" within "7 days from the receipt of the notice of appeal," the circuit court's "order is deemed reversed, the petition is deemed granted, and the clerk of the court must place a certificate to that effect in the file and provide the appellant, without charge, with a certified copy of the certificate." Fla. R. App. P. 9.147(d).

We are aware that the Florida Bar's Appellate Rules Committee has received a referral to consider proposing amendments to Rule 9.147 on the ground that its automatic-reversal provision conflicts with article V, section 4(a) of the

5

Florida Constitution (among other alleged deficiencies).[4] We also are aware of *In re Doe 23-B*, 377 So. 3d 1211 (Fla. 1st DCA 2024). In that decision, a unanimous panel of the First District Court of Appeal held that it lacks appellate jurisdiction to review judicial waiver denials in the absence of an adverse party to the appeal. *Id.* at 1219. Judge B.L. Thomas concurred and wrote to express his view that Florida's judicial-waiver regime violates rights guaranteed to the pregnant minor's parents under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 1219–20. The First District panel also unanimously certified two questions of great public importance to the Florida Supreme Court, the first being the jurisdictional question, and the second concerning potential conflict between Rule 9.147(d) and article V, section 4(a) of the Florida Constitution. *Id.* at 1220–21.

As soon as this panel became aware of Minor's appeal, and before we received the hearing transcript at approximately 11:53 a.m. on May 9, we realized that this appeal might implicate the weighty legal questions that the First District panel and Judge B.L. Thomas had identified. Therefore, on the morning of May 9, and cognizant that time was of the essence, we drafted a briefing order before we received the hearing transcript. Seven minutes after the hearing transcript was transmitted to our court, we conferenced the draft briefing order and voted to approve it; the order was docketed that afternoon at 1:29 p.m.

Pursuant to Rule 9.147(e), our May 9 order directed Minor's counsel to file a brief addressing the following four legal questions, which are not record-dependent, no later than 4:00 p.m. on May 12:

---

[4] Florida Bar Appellate Rules Committee, Civil Practice Subcommittee, Referral Number 24-AC-01 (referral originally submitted on Jan. 5, 2024; subcommittee recommended no action by divided vote; referral recommitted to subcommittee on June 21, 2024; subcommittee again recommended no action by divided vote on Sept. 16, 2024). Members of the public may learn how to request materials at this link: https://www.floridabar.org/committee-page/acrcmaterials/ (last visited May 13, 2025).

1. May a district court of appeal exercise appellate jurisdiction over a trial court's ruling denying a judicial waiver under section 390.01114(6)(b)2., Florida Statutes, in the absence of an adverse party in the appeal? *See In re Doe 23-B*, 377 So. 3d 1211, 1212–19, 1221 (Fla. 1st DCA 2024) (majority opinion and order certifying questions of great public importance).

2. By specifying that the lower court's "order shall be deemed reversed" and "the petition shall be deemed granted" if the district court of appeal fails to render its decision within seven days of transmittal of the record, does Florida Rule of Appellate Procedure 9.147(d) make a determination of substantive rights that section 390.01114 does not make, and does the Rule thereby impinge on the Legislature's constitutional authority to determine substantive rights? *See DeLisle v. Crane Co.*, 258 So. 3d 1219, 1224 (Fla. 2018) ("Generally, the Legislature has the power to enact substantive law while this Court has the power to enact procedural law. Substantive law has been described as that which defines, creates, or regulates rights . . . ." (citation omitted)).

3. Does an automatic reversal under Florida Rule of Appellate Procedure 9.147(d) when the district court of appeal fails to render a decision within seven days operate as a decision of the court and thereby conflict with article V, section 4(a) of the Florida Constitution, which provides, as to the district courts of appeal, that "[t]hree judges shall consider each case and the concurrence of two shall be necessary to a decision." *See In re Doe 23-B*, 377 So. 3d 1211, 1212–19, 1221 (Fla. 1st DCA 2024) (majority opinion and order certifying questions of great public importance).

4. Does section 390.01114, Florida Statutes, comport with the rights of the pregnant minor petitioner's parent(s) under the Due Process Clause of the Fourteenth Amendment to the United States Constitution? *See In re Doe 23-B*, 377 So. 3d 1211, 1219–20 (Fla. 1st DCA 2024) (B.L. Thomas, J., concurring).

In addition, our May 9 order invited Minor's counsel to brief any other matter that counsel believes would assist us in resolving Minor's appeal. Our order also invited the Attorney General to file a brief as *amicus curiae* addressing any of the four above-listed questions. At 11:49 p.m. on May 11, the Attorney General moved to intervene as a party to the appeal, representing that he would be an adverse party if granted intervention. At 9:28 a.m. on May 12, we ordered Minor's counsel to file her response in opposition to the Attorney General's intervention motion by noon that same day, and we *sua sponte* extended the deadline for briefs from 4:00 p.m. to 6:30 p.m.

## C.

At 12:15 p.m. on May 12, we granted the Attorney General's intervention motion. As "the chief state legal officer" of Florida, art. IV, § 4(b), Fla. Const., the Attorney General "[s]hall appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested, in the Supreme Court and district courts of appeal of this state." § 16.01(4), Fla. Stat. (2025). As the Attorney General correctly argued in his motion, "the State of Florida, through the Attorney General, is a proper party to any action in which the constitutionality of any general statute is raised, solely as to those papers, pleadings, or orders dealing directly with the constitutional issue." *State ex rel. Shevin v. Kerwin*, 279 So. 2d 836, 838 (Fla. 1973); *see also Fla. Carry, Inc. v. Univ. of N. Fla.*, 133 So. 3d 966, 989 (Fla. 1st DCA 2013) (Makar, J., concurring) (acknowledging "the Attorney General's broad and unquestioned authority to intervene as a party in any matter in which the State's interest[s] are implicated"). Our May 9 briefing order invited the Attorney General to brief whether "section 390.01114, Florida

8

Statutes, comport[s] with the rights of the pregnant minor petitioner's parent(s) under the Due Process Clause of the Fourteenth Amendment," and it ordered Minor's counsel to do likewise. Given our order to address constitutional concerns with section 390.01114, the Attorney General has a right to intervene in this case. "Even a party able to intervene as a matter of right," however, "must obtain a court order allowing intervention." *Bondi v. Tucker*, 93 So. 3d 1106, 1111 (Fla. 1st DCA 2012). Therefore, we have entered an order granting the Attorney General's intervention motion.

In granting the Attorney General's motion, we have concluded that section 390.01114(6)(b)2.'s reference to the possibility that a judicial-waiver proceeding will be "nonadversarial" does not preclude the Attorney General's intervention. The full statutory provision states: "The reason for overturning a ruling on appeal must be based on abuse of discretion by the court and *may not be based on the weight of the evidence* presented to the circuit court since the proceeding is a nonadversarial proceeding." § 390.01114(6)(b)2., Fla. Stat. (emphasis added). This statute simply acknowledges that no opposing party may have attended the trial court's waiver hearing and, therefore, no one may have been able to contest "the weight of the evidence presented to the circuit court." In such a circumstance, it is inappropriate for the appellate court to reverse the denial of a waiver based on an absence of evidence against the minor's position. The provision does nothing to frustrate the Attorney General's authority to intervene on appeal.

Florida's judicial-waiver regime does require that "[a]ll hearings under this section, including appeals, shall remain confidential and closed to the public, as provided by court rule," and "hearings held under this section must be held in chambers or in a similarly private and informal setting within the courthouse." § 390.01114(6)(f), Fla. Stat. This provision likewise does not bar the Attorney General's intervention. The Attorney General is not a member of the public, and in any event, we have not held any hearing (such as an oral argument) in this appeal. We also have ensured that the Attorney General's intervention is consistent with our duty to maintain a confidential record, and to keep confidential "[a]ny information that can be used to identify a minor

9

petitioning a circuit court for a judicial waiver." §§ 390.01116, 390.01114(6)(e)3., 390.0114(6)(f), Fla. Stat.; *see also* Fla. R. App. P. 9.147(f) ("The appeal and all proceedings within must be confidential so that the minor remains anonymous."). We have directed our Clerk to ensure the Attorney General has access only to a redacted version of the confidential record that removes all information that could be used to identify Minor. We also have directed the Attorney General to maintain the confidentiality of the redacted record and to limit its access to only those attorneys and employees of the Office of the Attorney General who are working on this matter. Finally, to safeguard both her appellate rights and her confidentiality, we granted Minor leave to file both an unredacted and a redacted brief. To safeguard any identifying information, we ordered that the Attorney General would be served only with a copy of the redacted brief.

## II.

The Attorney General's intervention as a party to this appeal has provided an adversity of litigation interests. Therefore, this appeal no longer poses the jurisdictional question that the First District confronted in *Doe 23-B*. We determine that we have appellate jurisdiction, and we will proceed to the merits.

"Dismissals of judicial waiver petitions receive exceedingly deferential appellate review." *In re Doe*, 370 So. 3d 703, 705 (Fla. 5th DCA 2023). "Under the statute, '[t]he reason for overturning' an order that declines to grant a judicial waiver petition 'must be based on abuse of discretion by the court and may not be based on the weight of the evidence presented to the circuit court since the proceeding is a nonadversarial proceeding.'" *Id.* at 705–06 (quoting § 390.01114(6)(b)2., Fla. Stat.).

We have reviewed the hearing transcript and the written order, and we discern no abuse of discretion by the circuit court. Indeed, we commend the circuit judge for the care with which she discharged her duties. Section 390.01114(6)(c)1.d. requires the circuit court to consider the minor's "[c]redibility and demeanor as a witness." While acting as an "independent inquisitor," *Doe 23-B*, 377 So. 3d at 1216, may not be the judge's role in normal adversarial proceedings where witnesses are subject to cross-

10

examination, it is the judge's proper function here. How else can the court make an accurate credibility assessment in this unique context? The minor has every reason to avoid testifying to facts that reflect negatively on her credibility, and the minor's counsel is charged with advocating her interests. If someone is going to ask the right questions to meaningfully weigh credibility, it's going to be the judge. *Cf. id.* at 1215–16 ("The lack of any adverse party results in a process that deprives the circuit court of many tools typically used to assess the credibility of witnesses presenting testimony."). The same holds true for the other waiver factors that the court must consider. A meaningful assessment of the factors requires an engaged judge who asks incisive questions; otherwise, the court will hear only testimony "drawn from leading questions posed by appointed counsel and answers provided to those questions by the minor and her chosen witnesses." *Id.* at 1216.

Here, the circuit judge demonstrated precisely the kind of engagement that the nonadversarial proceeding below required. She recognized Minor from a prior waiver hearing and detected several inconsistencies between her past and present testimony. The judge then investigated whether those inconsistencies were reconcilable. When it became apparent that the inconsistencies could not be reconciled, the judge stated on the record her finding that Minor's testimony lacked credibility. And the judge's written order then explained how Minor's lack of credibility impacted the court's assessment of the other statutory maturity factors and of its best-interest finding.

We must affirm "unless 'no reasonable person would take the view adopted by the court.'" *In re Doe*, 325 So. 3d 99, 100 (Fla. 5th DCA 2019) (quoting *Treloar v. Smith*, 791 So. 2d 1195, 1197 (Fla. 5th DCA 2001)). Our review of the record leads us to conclude that the circuit court's well-reasoned and well-supported ruling exceeds that low bar. Thus, we will affirm.

### III.

It occurs to us that our holding—namely, that the circuit court did not abuse its discretion by rejecting Minor's petition for lack of credibility—does not have a bulletproof record to support it. While we commend the circuit judge for her careful work, Minor correctly

11

points out that the record does not contain a transcript of her prior waiver hearing; it contains only the transcript of her latest one. *See In re Doe*, 924 So. 2d 935, 940 (Fla. 1st DCA 2006) ("Courts in judicial bypass cases are constrained to consider only the record in making a decision."). And during the latest hearing, the lion's share of the information regarding what transpired during the prior hearing came from the judge's statements and questions, rather than Minor's testimony. The judge's statements and questions are not testimony or evidence. Therefore, we lack enough material in the record to adequately evaluate whether the judge's recollections of the prior hearing were well-founded. This incompleteness in the record matters because, as Minor observes, the circuit court's credibility determination drove its analysis of many of the other statutory maturity factors and provided the court's entire rationale for its best-interest determination.

Despite this gap in the record, we tend to believe our deference to a trial court's credibility and demeanor determinations suffices to affirm the circuit court's ruling. *See Bender v. State*, 359 So. 3d 429, 433 (Fla. 5th DCA 2023); *Branham v. Branham*, 351 So. 3d 1245, 1246 (Fla. 5th DCA 2022); *Hill v. State*, 890 So. 2d 485, 487 (Fla. 5th DCA 2004). But we are not so confident as to presume reasonable judicial minds couldn't differ on the question. In the ordinary course, our doubts about the sufficiency of the record might counsel a remand for the circuit court to hold a follow-up hearing to enter into the record a transcript of the prior waiver hearing. But these are not ordinary circumstances. As Minor correctly observes in her brief, "[g]iven the extraordinarily short timeframe within which the judicial waiver process must occur, and given that [Minor] is nearing the six-week deadline for termination of pregnancy, remand for further consideration would not be an appropriate or acceptable remedy." And as Judge MacIver rightly points out, this appeal may be the first and only opportunity an appellate court of this State has ever had to address the constitutional question, which has thus far evaded review despite being posed in an untold number of prior cases. Under these unique constraints, we believe it necessary to address whether the record discloses an alternative, tipsy coachman basis

12

for affirmance.[5] With the benefit of adversarial briefing, we conclude that it does.

In his brief, the Attorney General argues that Florida's process for maturity and best-interest judicial waivers conflicts with the constitutional rights of pregnant minors' parents. The Attorney General correctly points out that "perhaps the oldest of the fundamental liberty interests" that the Fourteenth Amendment secures is the right of parents to the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.); *id.* at 66 ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."). Critically, the U.S. Supreme Court has acknowledged that this parental right is implicated in the context of a child's "need for medical care or treatment." *Parham v. J.R.*, 442 U.S. 584, 603 (1979) (citing as examples "a tonsillectomy, appendectomy, or other medical procedure"); *see id.* ("Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment. Parents *can and must* make those judgments." (emphasis added)). "Simply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." *Id.*

In addition, the Attorney General points to a rich common-law tradition of empowering parents to order their children's affairs, even over their children's objections, and argues that this rich historical tradition informs proper interpretation of the parental rights that article I, section 2 of the Florida Constitution secures. Indeed, the Florida Supreme Court has made clear that our state constitution offers more protection for parental rights than does

---

[5] *See Adams v. State*, 289 So. 3d 958, 959 n.2 (Fla. 5th DCA 2020) ("'Tipsy coachman' allows an appellate court to affirm a lower court's decision that reaches the right result, but for the wrong reason, so long as there is any basis in the record to affirm the judgment or order.").

the federal Constitution. *See D.M.T. v. T.M.H.*, 129 So. 3d 320, 334–35 (Fla. 2013) (noting that under the Florida Constitution, parental rights are "so basic as to be inseparable from the rights to enjoy and defend life and liberty, (and) to pursue happiness") (quoting *Grissom v. Dade Cnty.*, 293 So. 2d 59, 62 (Fla. 1974), which, in turn, quotes art. I, § 2, Fla. Const.); *id.* at 335–36 (concluding that parents possess a "fundamental [state-law] right" to "make decisions concerning the care, custody, and control of their children," and that state-law protections are even "greater . . . than" those "afforded by the federal constitution" (quotation marks omitted)).

The Attorney General then argues that any deprivation of parents' fundamental right to be informed of and consent to their children's abortion must meet strict scrutiny, and that Florida's judicial waiver regime cannot overcome that high hurdle. We think it unnecessary to address that argument because, even assuming that parents can be deprived of this right, any deprivation must at a minimum entail *due process*. It's difficult to see how the Fourteenth Amendment's Due Process Clause can countenance a process whose entire function is to deprive presumptively fit parents[6] of the most basic due-process guarantees—notice and opportunity to be heard—on the question whether they must forfeit an important parental right that the state and federal constitutions secure to them. "The fundamental requisites of due process of law are notice and the opportunity to be heard." *State v. Patsas*, 60 So. 3d 1152, 1152 (Fla. 5th DCA 2011). If the State must provide those requisites when it imposes supervision on a parent's visitation rights, *see Winthrop v. Castellano*, 113 So. 3d 999, 1000–01 (Fla. 5th DCA 2013), or when it makes custody determinations, *see Moore v. Wilson*, 16 So. 3d 222, 224 (Fla. 5th DCA 2009), it also must provide them when it considers whether to deprive parents of "the most fundamental liberty interest recognized in law: the

---

[6] The maturity and best-interest judicial waivers that this appeal concerns do not involve emancipated minors or abuse allegations. Nor do they relate to parents whose parental rights have been lawfully terminated. Rather, they target "parents or guardians whom the law otherwise presumes to act in the minors' best interests." *Doe*, 370 So. 3d at 707 (Pratt, J., concurring).

14

fundamental right to care for and raise their daughter, to advise and counsel her regarding [the abortion] decision." *Doe 23-B*, 377 So. 3d at 1219 (B.L. Thomas, J., concurring).

Minor nonetheless points to various precedents that hold children are entitled to judicial waiver procedures to effectuate their state and federal constitutional rights to obtain an abortion. We are unpersuaded. Whatever asserted constitutional abortion rights may have justified Florida's judicial-waiver regime in the past unequivocally have been repudiated by both the U.S. Supreme Court and the Florida Supreme Court. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022) (holding that the federal Constitution does not guarantee a right to abortion, overruling prior precedent); *Planned Parenthood of Sw. & Cent. Fla. v. State*, 384 So. 3d 67, 88 (Fla. 2024) (holding that the Florida Constitution does not guarantee a right to abortion, receding from prior precedent). Therefore, any deprivation of parents' due-process rights to notice and opportunity to be heard can no longer be justified by their children's asserted constitutional right to obtain an abortion (much less a secret abortion that cuts presumptively fit parents out of the decision).

Finally, even if article X, section 22 of the Florida Constitution requires the judicial-waiver process that the Legislature has enacted—an issue on which we express no opinion—any such requirement must yield to the Fourteenth Amendment's demands. *See* art. VI, U.S. Const. ("*This* Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (emphasis added)). At a minimum, the Fourteenth Amendment demands notice and an opportunity to be heard before a presumptively fit parent can be deprived of his or her right to be informed of and make medical decisions, including abortion decisions, for his or her child. By design, Florida's maturity and best-interest judicial waiver procedures afford neither.

In short, we hold that the invalidity of Florida's maturity and best-interest judicial-waiver regimes under the Fourteenth Amendment's Due Process Clause independently requires affirmance.

## IV.

We have done our best to navigate the weighty questions that this appeal poses in the time allotted, and we are grateful that we had the benefit of thoughtful adversarial briefing to assist us in that endeavor. We commend Minor's counsel and the Attorney General for the quality of the arguments that they presented in so compressed a timeframe. However, "[g]iven just [the] handful of days" that we had "to issue an opinion, [we] cannot profess the kind of certainty [we] would like to have about the arguments and record before us." *TikTok Inc. v. Garland*, 145 S. Ct. 57, 75 (2025) (Gorsuch, J., concurring). We take comfort in the fact that the Florida Supreme Court has mandatory jurisdiction to review our decision, given that we have held and declared invalid the maturity and best-interest judicial waiver regimes of section 390.01114(6)(c), (d), Florida Statutes. *See* art. V, § 3(b)(1), Fla. Const.

Anticipating the prospect of Florida Supreme Court review, we reiterate the scope of our ruling. As we have explained, the Attorney General's intervention as of right in this appeal obviates the appellate jurisdictional question on which we ordered briefing. In addition, our resolution of this appeal within the seven-day deadline provided in Rule 9.147(d) means that this case will not continue to pose the second and third questions on which we ordered briefing. Thus, while those questions may merit the Florida Bar Appellate Rules Committee's consideration—or the Florida Supreme Court's consideration in a future rulemaking proceeding—they will not, in our view, require the Court's consideration in any direct review of our timely decision.[7]

---

[7] Minor argued that the Rule's automatic-reversal provision is valid. The Attorney General, however, took the position that the provision strays beyond matters of procedure and violates the Florida Constitution's separation of powers by impinging on the Legislature's prerogative to determine substantive rights. Moreover, without taking a firm position, the Attorney General indicated that the Rule's automatic-reversal provision also raises

While we believe that the Florida Supreme Court has mandatory jurisdiction to review our decision, in an abundance of caution, on our own motion, we certify to the Florida Supreme Court the following question of great public importance:

> DO THE MATURITY AND BEST-INTEREST JUDICIAL WAIVER PROCEDURES OF SECTION 390.01114(6)(C), (D), FLORIDA STATUTES, COMPORT WITH THE RIGHTS OF THE PREGNANT MINOR PETITIONER'S PARENT(S) UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION?

Finally, because judicial-waiver proceedings in the circuit courts are typically nonadversarial, we direct the Clerk to immediately share a copy of this filed opinion with all Chief Circuit Judges in the State to ensure their awareness of it. *See Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So. 3d 967, 973 n.4 (Fla. 2009) ("In the absence of inter-district conflict or contrary precedent from this Court, it is absolutely clear that the decision of a district court of appeal is binding precedent *throughout Florida.*" (emphasis in original)). We also direct the Clerk to issue the mandate immediately after this opinion is docketed.

AFFIRMED; QUESTION CERTIFIED.

MACIVER, J., concurs with opinion.
LAMBERT, J., concurs in result without opinion.

---

substantial concerns under the two-judge concurrence rule of article V, section 4(a) of the Florida Constitution.

17

MacIver, J., concurring.

I join fully with the majority's opinion and determination that the order below must be confirmed because the trial court did not abuse its discretion in denying the petition. I also join fully with the majority's opinion and determination that the maturity and best interest provisions are unconstitutional on their face, and with the certification of the question. I write separately only to note why I think it is appropriate for us to reach the constitutional question.

Courts will normally decline to reach a constitutional question where the case can be resolved on other than constitutional grounds. Alternately called constitutional avoidance doctrine or the last resort rule, the rule has existed in Florida since at least 1888. The policy behind the rule stems from "respect for other branches and levels of government, an awareness of the limitations of judicial power, sensitivity to the burdens of a constitutional adjudication, and appreciation that others may provide a more useful answer." *Sullivan v. Sapp*, 866 So. 2d 28, 39 (Fla. 2004) (Cantero, J. concurring in part and dissenting in part) (internal citations omitted). As such, the rule is almost universally applied, and courts are and should be reluctant to depart from this prudential abstention rule. Such departure should be exceptionally rare and should be based upon more than the court's impression of what is or is not an "important question."

To illustrate why this case justifies a rare exception to the doctrine of constitutional avoidance, we can look to the reasoning for an exception to another prudential rule—mootness. Courts will normally abstain from deciding a case where the controversy in the case has been resolved or otherwise extinguished prior to the court rendering its decision. *Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992). A long-recognized exception to the mootness doctrine is that the controversy in question (normally an alleged violation of rights) is capable of repetition but likely to evade review by the courts. *See Logan v. State,* 846 So. 2d 472, 473 n.1 (Fla. 2003). Courts have decided that the prudential reasons for abstaining

from decisions in moot cases must cede to the potential for continued violation rights where redress cannot be sought before the remedy would be obviated.

Here, the majority agrees that the fundamental rights of Florida's parents are being violated by a facially unconstitutional statute. The violations will continue by operation of the statute. Further, the ability to seek redress instead of being obviated will never manifest because the individual parent whose rights will be violated in a discreet case will by design be wholly unaware of that fact.

The only opportunity for a defense of those fundamental rights came about here because the Attorney General of Florida was invited to brief as amicus and instead sought intervention. Because of the confidential and non-adversarial status of these cases, without that intervention the Attorney General would, like the parents whose rights are being violated, be entirely in the dark.

A future case where there is no alternative ground for affirmance would not (without additional court intervention) involve the Attorney General. Indeed, the statutory scheme is designed by default to involve no-one except the petitioner and the court. It is only because of the unique posture of these cases that the normal doctrine of constitutional avoidance must yield to the rights of parents who would otherwise have no redress or even knowledge of the violence being done to their constitutional rights.