## HOWE v. FEDERAL SURETY CO.

No. 23387. Opinion Filed Nov. 15, 1932.

Rehearing Denied Dec. 27, 1932.

Walter E. Latimer and John B. Shields, for plaintiff in error.

Ames, Cochran, Ames & Monnet, for defendant in error.

RILEY, J. The Federal Surety Company secured a judgment against L. J. Howe in the district court. L. J. Howe has attempted to appeal to this court. He has tendered a petition in error with case-made attached, but there has not been made a deposit for costs with the clerk of this court as required by section 3036, C. O. S. 1921, as amended by chapter 102, S. L. 1927, p. 163 [O. S. 1931, sec. 3774]. In lieu of such cost deposit L. J. Howe has submitted an affidavit in forma pauperis.

The question therefore occurs whether a litigant in this court may be relieved, by reason of poverty, from compliance with the statute specifying that:

"In each case hereafter filed in the Supreme Court, and at the time of filing same, there shall be deposited with the clerk as costs in said cause, twenty-five ($25) dollars. Said sum shall cover all court costs in said cause and no rebate of any part thereof shall be made."

Reliance is sought under the proviso of section 764, C. O. S. 1921, as amended by chapter 117, S. L. 1923-24.

"Provided that, in any case, where the plaintiff claims he has a just cause of action against the defendant and that, by reason of poverty, he is unable to pay the costs, or give security therefor, upon the filing of an affidavit by such plaintiff in such action to that effect, no bond, security or deposit shall be required. * * *"

But it is apparent that neither the proviso nor the statute is applicable to cost for causes or appeals in the Supreme Court. The statute is a general one. The statute first quoted, under the uniform rule of construction, is applicable, to the exclusion of the general statute, as affecting costs in the Supreme Court. The general statute was never intended to apply to the Supreme Court, but to the district, superior, and county courts, for in the text the words "court clerk" are used, and under the proviso the designated party to be relieved of costs by reason of poverty is the plaintiff. Thus it is that judgment in the nisi prius court, which is always presumptively just,

is not to be denied a plaintiff by reason of his poverty.

Relief is sought under section 6, art. 2, Const. of Oklahoma, which provides:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

Thus the question of the constitutionality of section 3036, C. O. S. 1921, as amended by chapter 102, S. L. 1927 [O. S. 1931, sec. 3774] is raised. This question was adjudicated in the cause of In re Lee, 64 Okla. 310, 168 P. 53, wherein it was held that the statute "imposing a docket fee of $25 in each cause filed in the Supreme Court * * * is not a sale or denial of justice and right within the meaning of section 6, art. 2, of the Constitution (Williams', sec. 14)."

Therein it was pointed out that this section of the Bill of Rights is not peculiar to our Constitution, but that a similar declaration is common to Constitutions of many states of the Union, having its origin with Magna Charta. It is said by many to have formed the most important article in the great Charters of Liberties.

Therein it was declared:

"We will sell to no man, we will not deny or defer to any man, either justice or right."

Thus the King, who constituted the law and the courts, spoke: "Nulli vendimus." Consequently every subject of the realm, for injury committed by another to his goods, lands or person, possessed a remedy at law and was entitled therefor to justice, freely without sale, fully without denial and speedily without delay. (Coke's Insts., p. 6, 2, p. 55.)

In order to understand the guaranty it is requisite that we know the evils then remedied by the barons. Theretofore men paid fines in order to obtain justice. Others contributed in order to have their proceedings in court speeded. Whereas, some delayed proceedings at law against them by payment of a toll, and others terminated such proceedings by contributions under the law. The judgment creditor was obliged to pay great and excessive fines, a fourth part, a third part, or a half of the debt sued for, to obtain justice and right, according to the several cases, so that the King seemed to sell justice and right to some and to delay or deny it to others. It is obvious that in the days of the ancient kings, alike to modern times, additional sources of revenue were sought. Then justice was a thing of commerce and was avowedly bought and sold. The King's court—the supreme judiciary—was open to none who came not with presents to the King. The Barons of the Exchequer, the first nobility, were awarded money in exchange for fair dealing, for permission to make defenses, for "free law," and the like. Harrison, Peffer & Co. v. Willis (Tenn.) 19 Am. Rep. 604. "Against these mischiefs a remedy was provided by a clause in the great Charters of Liberties made by King John and King Henry III, that clause in each of those charters runs in the same or consonant words, which are these: Nulli Vendemus, Nulli Negabimus, aut differemus rectum aut justiciary." History of the Exchequer, Madox.

The Rhode Island court, in Perce v. Hallett, 13 R. I. 364, says in regard thereto:

"The better opinion is that it was designed to abolish, not fixed fees, prescribed for the purpose of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor."

Uniform decisions support this view that this language of our Constitution means simply that justice shall not be bought nor shall the attendant or incidental expenses of litigation, in the nature of costs and disbursements, be so exorbitant and onerous as to virtually close the doors of courts of justice to those who may have occasion to enter there.

In other words, the rights of the poor man to redress of his grievances shall be equally respected with those of the rich, and that equal and exact justice shall be dealt out alike to all, but the requirements of the statute relating to fees to be paid by litigants in this court do not impinge nor intrench upon the Constitution as thus interpreted. Northern Counties Inv. Trust v. Sears (Ore.) 35 L. R. A. 188.

"Indeed, it may well be doubted," says the Indiana court, Henderson v. State ex rel., 24 L. R. A. 469, "as to whether a case has ever arisen in this country to which the clause of the Constitution under immediate consideration was applicable."

Our own court has said that "it was never intended to guarantee the right to litigate entirely without expense to the litigants, nor to impose upon the public the entire burden of the expense of the maintenance of courts."

The North Dakota court, which extends the most liberal meaning to this guaranty of the Constitution, says:

"The right to require reasonable court fees, indeed, has been so generally conceded that a discussion of the proposition hardly seems to be necessary. The imposition of such fees is not a denial or sale of justice, provided that they are uniform, are reasonable, and have a reasonable relation to the services rendered." Malin v. Lamoure Co., 50 L. R. A. (N. S.) 997, Ann. Cas. 1916C, 207.

Nor is it essential to such exactions for costs that they should inure to the personal benefit of the officer receiving them, but, in accord with statute, the same may go into the public treasury. State v. Judges, 21 **Ohio St. 12.**

There is no contention here that the amount of the fee required is unreasonable. In fact the fee required is exceedingly low, for the amount thereof was fixed at $25, in response to a message of the Governor to the 5th Legislature at a time when it was estimated "that it cost the state on an average of about $50 for every civil case appealed to the Supreme Court." (S. J. 5th Legis. Okla. p. 138.) It was thereby sought to make the litigants in civil cases bear at least a part of this burden. Now the cost has practically doubled, until during the last year the cost per civil case is estimated to be $94.31. There is no reason why the peaceable man who settles his matters without legal controversies should be taxed to furnish this legal luxury entirely to the litigious citizen. An equal division of the burden has been the policy in this and almost all other states.

Under section 3774, Okla. Stats. 1931, as amended, a deposit of $25 is required without exception (see sec. 514, Okla. Stats. 1931) as a condition precedent to filing a case in this court. "It is very generally held that, in the absence of special statutory authorization, no one is entitled to sue as a poor person." 15 C. J. 232.

Section 798, C. O. S. 1921 [O. S. 1931, sec. 547] requires the perfection of an appeal within six months from the date of judgment below. Obviously the six-month period has expired.

In Converse v. Berry, 131 Okla. 188, 268 P. 235, this court held:

"The filing of a petition in error depends upon the terms of the statute authorizing it, and will not become operative until the requisites are first complied with, and if a fee is made a necessary coincident thereto,

no filing is accomplished or effected without the payment of such fee."

It is contended that, notwithstanding the state of this cause, there has been a proper filing within time prescribed, and therefore the parties are entitled to a decision on the merits. While it is true that on February 25, 1932, the Chief Justice, as directed by a majority of the court, upon presentation of the urgent appeal of L. J. Howe, granted:

"Permission to file without cost, subject to further action of the court."

Nevertheless, upon re-examination, we find, and hold, that this court is without authority to waive a positive and reasonable requirement of the statute. No one would suggest that this court could permit the filing of a transcript or case-made after the expiration of the six-months period prescribed by statute in which to perfect appeals.

It is apparent that the positive statutory requirement for costs deposit is as much a prerequisite as the filing within the time allowed by law, as much so as the presentation of a case-made or transcript. It is jurisdictional, and so held in this and other jurisdictions. Hilts v. Hilts (Ore.) 72 P. 697.

In the cited case it was held:

"The fee not having been paid in advance, there was no filing within the purview of the law, within the prescribed limits for filing such transcript; hence the motion should be allowed, and the appeal dismissed. However desirous it may be to have causes disposed of on their merits, the court cannot evade or override a positive statute, to enable it to do so. Indeed, it can acquire no jurisdiction for that purpose in the face of such statute."

The Supreme Court of the United States has settled this identical question in Bradford v. So. Ry. Co., 195 U. S. 243. The syllabus to that decision reads:

"The Act of July 20, 1892, providing when a plaintiff may sue as a poor person, does not apply to appellate proceedings. Federal appellate courts have no power to permit prosecutions in forma pauperis in the absence of a statute."

The opinion of that court states that Moore v. Cooley (N. Y.) 2 Hill, 412, is a leading case on the subject, and Judge Cowen of the New York court is quoted as follows:

"There can be little doubt that the statute under which this motion is made, should be construed strictly; for the pauper comes

to litigate entirely at the expense of others. He is neither to pay his own attorney or counsel, nor is he liable to his adversary, should the suit prove to be groundless. He thus enjoys a great privilege and exemption from the common lot of men, whereby in respect to causes of action proper, he becomes, as Lord Bacon says, rather able to vex than unable to sue."

The Supreme Court of the United States stated the rule that "costs are the creatures of statute, and it is settled that authority to permit prosecution in forma pauperis must be given by statute."

It is not so given as applied to action pending in the Supreme Court of this state.

It is to be noted that by virtue of statute, section 445, C. O. S. 1921 [O. S. 1931, sec. 706] no deposit or security for cost shall be required of an applicant for a writ of habeas corpus.

We have considered the following cases cited by attorneys for L. J. Howe: Peterman v. Chapman, 83 Okla. 58, 200 P. 776; Mays v. Pitchford, 26 Okla. 129, 109 P. 821; Jeffries v. State, 9 Okla. Cr. 573, 132 P. 823. These decisions are neither decisive nor persuasive as to the question of costs on appeal to this court.

The cause is dismissed.

HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., J., concur.