In the Matter of John Henry RICH, IV and Dawn Raquel Rich, children under the age of eighteen years.

John Henry RICH, III, Appellant,

v.

Loyd LANG and Geneva Lang, Appellees.

No. 48773.

Supreme Court of Oklahoma.

Dec. 18, 1979.

Gary E. Payne, Payne & Stubblefield, Atoka, Stanley G. Schneider, Richard L. Griffin, Huntsville, Tex., for appellant.

Cal Hoover, W. B. Ward, Jr., Ada, for appellees.

OPALA, Justice:

This appeal raises four questions: [1] Was an indigent out-of-state prisoner entitled to a free trial transcript in this civil appeal from an order adjudicating his chil-

dren's status as deprived and terminating his paternal rights? [2] Was the prisoner denied due process when the trial court proceeded to terminate his paternal rights over the objection by appointed counsel that he had been prevented by out-of-state incarceration from being able to appear in person to give *viva voce* testimony in the case? [3] Is there competent evidence to support the verdict which finds the children in a deprived status? and [4] Was denial of paternal grandparents' plea in intervention reversible error? We find the proceedings under review free from both error and constitutional infirmity.

Appellant [Father] is incarcerated in a Texas prison under a life sentence for the murder of his wife, the mother of the children whose status is here in question. Maternal grandparents, who had charge of these children, sought an adjudication of their status as deprived, permanent custody and termination of Father's rights. In accordance with a jury verdict in the proceeding the children's deprived status was judicially determined. Some nine months later Father's rights came to be terminated. This is an appeal by the Father from both the deprived-status adjudication as well as from the termination order. He is represented here by counsel appointed by the trial court who has been active in his behalf since the very inception of the proceedings below, as well as by a self-procured Texas lawyer, of whom he had three in succession.

■ Father's initial petition-in-error was filed here thirty-one days after the deprived-status order.[1] Because the last day for bringing that appeal fell on a Sunday, the motion by appellees, maternal grandparents, to dismiss it must be denied. The appeal was timely instituted. When the public office in which an act is to be performed is closed on the terminal day prescribed therefor, time to perform that act is extended to the next business day.[2]

■ For over four decades now federal case law has been increasingly coming to grips with the impact of broadly phrased constitutional values on the responsibility of our government—federal, state and local—to guard against what may appear as plainly uneven forensic combat between the government's own forces of police and prosecution and those indigent individuals who are haled into courts for imposition of criminal punishment or juvenile delinquency-related sanctions.[3] The large body of extant federal precedent is grounded on more than a single source of fundamental law. Some of the cases invoke Due Process—that universal gauge of our constitutionally-mandated dimension of fairness in the legal system—others profess to rest on Equal Protection, the Sixth Amendment's right to counsel or that amendment's guaranty of compulsory process for defense witnesses.[4] Beyond the contours of criminal, delinquency and, perhaps, mental health process, there is but meager federal constitutional authority on the subject.[5] Fixed landmarks

1. A civil appeal must be commenced within 30 days of the appealable decision. 12 O.S.1971 § 990.

2. 12 O.S.1971 § 82; 25 O.S.1971 § 82.1; *Evans v. Davis*, Okl., 405 P.2d 975, 977 [1965]; *Crabtree v. Crabtree*, Okl., 420 P.2d 494, 496 [1966]; *David v. Pennwalt Corp.*, Okl., 592 P.2d 980, 981 [1979].

3. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 [1932]; *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 [1938]; *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 [1963]; *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 [1967]; *Mayer v. Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 [1971].

4. *Powell v. Alabama*, supra note 3 (Due Process); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 [1956] (Equal Protection); *Gideon v. Wainwright*, supra note 3 (Sixth Amendment right to counsel); and *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 [1967] (right to compulsory process for witnesses).

5. *Boddie v. Connecticut*, 401 U.S. 371, 380–382, 91 S.Ct. 780, 787–788, 28 L.Ed.2d 113 [1971], holds that due process is denied when resourceless persons, unable to pay court costs, are barred from the opportunity to litigate matters of family status (divorce) in state courts of first instance. We applied *Boddie* in the *Matter of Del Moral Rodriguez v. State*, Okl., 552 P.2d 397, 399 [1976] to impose on the state the

there are none to guide us through the pathway of federally-mandated state responsibility to prevent that civil process disadvantage—at trial or appellate level—which stems from a party's lack of adequate economic resources and results in an unfair court battle against his non-public adversary. *Suffice it to say that in forensic disputes over parental, spousal or custodial rights, the U.S. Supreme Court has not been willing to extend the resourceless litigant the very same constitutional protection and procedural safeguards which apply to a felony defendant under the Bill of Rights.*

Oklahoma law shows a high degree of sensitivity to the resourceless litigant involved in non-delinquency-related aspects of juvenile process. It affords him/her both access to our courts and the means of fairly litigating in them. Our statutes authorize the appointment of state-paid counsel for both indigent parents and minors.[6] No court costs may be taxed to any party in the proceeding.[7] Since 1972 this court has been authorized to dispense with cost deposit when civil appeal is sought to be prosecuted by an indigent person.[8] The Father in this case is a recipient of all these legal benefits. He has been allowed the services of a court-appointed lawyer, although he has had three additional self-procured counsel in succession. The last one of these is co-counsel here. So far as the record discloses, he has had no difficulty securing, cost-free, needed process for the attendance of his witnesses. Lastly, the clerk of this court has accepted his petition-in-error, with an affidavit pursuant to 12 O.S.1971 § 922, as sufficient for institution of his appeal *in forma pauperis.* No one challenged here the Father's condition as a person without means by invoking the provisions of 28 O.S.Supp.1978 § 152. We hence permit the case to stand in its present cost-free posture. Moreover, we recognize the course followed as being in compliance with 20 O.S.Supp.1978 § 15 and with the current operating procedures of this court.

## I

Oklahoma law also shows a high degree of sensitivity to the needs of those persons, with limited or no means at their disposal, who desire to procure appellate review of trial proceedings but cannot afford to defray the high cost of a court reporter's transcript based on a legislatively prescribed per-page rate.[9] Alternatives to the transcript, which may be available as an approved form of substituted record, provisional or permanent, are:

(1) a statement of material facts alleged not to have been proved which were deemed essential to support the judgment sought to be reviewed.[10]

(2) a statement of the evidence in narrative form.[11]

(3) a stipulation of all, or pertinent part of, the proceedings.[12]

responsibility for paying the costs of publication in a parental termination proceeding.

The full shield of safeguards afforded in criminal prosecutions does not apply to parental rights' litigation. In *Smith v. Organ. of Foster Families for E. & Reform,* 431 U.S. 816, 97 S.Ct. 2094, 2112, 53 L.Ed.2d 14 [1977] the Court said that "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'"; Cf. *Matter of Chad S.,* Okl., 580 P.2d 983, 985 [1978]. Our due process concept under Art. 6 § 7, Okl.Con., is said to be coextensive with its federal counterpart. *McKeever Drilling Co. v. Egbert,* 170 Okl. 259, 40 P.2d 32, 36 [1935].

**6.** 10 O.S.1971 § 24.

**7.** 10 O.S.Supp.1976 § 1124.

**8.** 20 O.S.Supp.1978 § 15. Before the 1972 amendment this court deemed itself precluded from entertaining appeals attempted to be brought on a pauper's affidavit. *In re Lee,* 64 Okl. 310, 168 P. 53 [1917] and *Howe v. Federal Surety Co.,* 161 Okl. 144, 17 P.2d 404 [1942].

**9.** 20 O.S.Supp.1972 § 106.4(b).

**10.** Rule 1.21, Civ.App.Proc.Rules, 12 O.S. Ch. 15, App. 2.

**11.** Rule 1.22, Civ.App.Proc.Rules, 12 O.S. Ch. 15, App. 2; See *Nu-Pro, Inc. v. G. L. Bartlett & Co., Inc.,* Okl., 575 P.2d 620, 622 [1977].

**12.** Rule 1.20(f), Civ.App.Proc.Rules, 12 O.S. Ch. 15, App. 2.

(4) the medium (tape, disc or record) on which the proceedings were electronically recorded when certified as to correctness by the trial judge or court reporter.[13]

Neither the Father's brief nor the record discloses why one of these alternative devices was not available or was inadequate for a fair prosecution of this appeal. Under federal constitutional case law it is not error to deny a cost-free transcript in a criminal prosecution when the availability of an adequate alternative has been shown.[14] Not even in criminal cases is state government required by the Equal Protection Clause to furnish penny-for-penny, every conceivable resource which a financially able litigant may be willing to expend in order to vanquish his adversary.[15]

 Father's federally-grounded claim that denial of a free transcript deprived him of Due Process or Equal Protection is without merit. He was afforded a meaningful and legally adequate opportunity for a fair resolution of issues which pertain to his status vis-a-vis the two children. Turning to the Father's assertion of state constitutional rights under Art. 2 §§ 6 and 7, Okl.Con.[16] we establish as a rule of practice that an application for cost-free transcript in a juvenile proceeding unrelated to delinquency must be accompanied or followed by a showing of unavailability or inadequacy of alternative media for record preparation.[17] In each instance the burden shall additionally rest on the applicant to show that a transcript is indispensable to afford him/her Due Process. Absent a requisite showing, it is not error to deny the application.

The trial court's order denying the Father's request for a transcript at public expense is free from federal or state constitutional infirmity. Our previous order to the same effect, rendered in pre-decisional stage of this appeal, must stand.

## II

The Father contends that his involuntary absence from the two proceedings in which his children were adjudicated to be in a deprived status and his paternal rights came to be terminated operates to deny him due process within its Fourteenth Amendment meaning.

Oklahoma law allows testimony from an incarcerated witness to be taken by deposition in lieu of *viva voce*.[18] The record dis-

---

**13.** This alternative stands approved for criminal review in *Britt v. North Carolina*, 404 U.S. 226, 229–230, 92 S.Ct. 431, 434–435, 30 L.Ed.2d 400 [1971]; *Mayer v. Chicago*, supra note 3. See also *Morgan v. Graham*, Okl.Cr., 497 P.2d 464 [1972].

**14.** *Britt v. North Carolina*, supra note 13. *Britt* requires the prosecution to show the alternatives offered are partly or wholly inadequate.

**15.** *Ross v. Moffitt*, 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 [1974]. There the Court said: "The duty of the State . . . is not to duplicate the legal arsenal that may be privately retained . . . but only to *assure the indigent . . . an adequate opportunity to present his claims fairly* . . ." [emphasis ours].

**16.** Art. 2 § 6 Okl.Con., provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

Art. 2 § 7, Okl.Con., is Oklahoma's counterpart of the Fifth Amendment's Due Process Clause.

**17.** Unlike in *Britt*, supra note 13, a criminal case, we place upon the applicant the burden of showing unavailability or inadequacy of record devices alternative to the transcript. We see no reason in a civil case to saddle the *onus* on the successful litigant in the trial court and thereby disturb the presumption of correctness which attaches to the judgments of a first-instance civil court.

**18.** Testimony of witnesses may be taken by (1) affidavits (2) deposition and (3) oral examination. 12 O.S.1971 § 421. A deposition may be used when a party is unable to attend court because of his *incarceration*. 12 O.S.1971 § 433. Where a deposition is taken and filed in the case, either party is entitled to its use in the trial of the case. *Smart v. Cain*, Okl., 493 P.2d 821 [1972], and it becomes a part of the record. *U. S. v. Choctaw, O. & G.R.Co.*, 3 Okl. 404, 41 P. 729 [1895].

closes *no* effort to secure the Father's testimony in this manner.[19]

■ The Father is entitled under the Federal Constitution to a meaningful and fair opportunity to defend in a family-status suit.[20] He was assured of effective access to the courts by the appointment of free counsel. His opportunity to meet the issues raised *via* deposition testimony was nowhere impaired. If he had no lawyer in these proceedings we could not expect him to make a record conformable to prescribed procedure. Since legal counsel were serving, we must ascribe the absence of deposition testimony in the record to deliberate strategy choices of counsel acting in the best interest of their client's cause.

■ The Father's presence at these proceedings was not the only effective means of fairly meeting the issues. He was hence, by his absence, denied no opportunity for a fair and just hearing. Courtroom confrontation with one's civil adversary is not required either by due process or other constitutional strictures.[21]

### III

We next pass to the Father's contention that the evidence adduced at both the hearings to adjudicate the status of his children and to terminate his paternal rights was insufficient to support the orders made.

■ The papers forwarded to us contain no record of trial proceedings in any form. Nor do we have before us deposition testimony or any other evidence upon which we may determine the merits of this assigned error. The Supreme Court is, of course, confined to the record made below. It may not accept, as a basis for its decision, argument for which there is no foundation in the record before it.[22]

■ Where the record does not contain evidence presented at trial and no errors appearing on the face of the judgment roll are assigned, there is nothing for us to review and the trial court's judgment may not be disturbed.

### IV

The Father urges that the trial court erred in refusing to allow in the proceedings below intervention by his parents, the paternal grandparents. Although the record shows that these grandparents filed a motion to intervene before the deprived-status adjudication, it is silent as to the disposition made. The court's order terminating paternal rights recites that the grandparents were in fact allowed to appear in person and by counsel at the dispositional hearing below.

■ No appeal was lodged by the Father's parents. A denial of intervention, a final order as to them, would have been appealable. Since they did not bring an appeal, the Father cannot maintain one in their behalf to complain of errors by which they, rather than he, came to be aggrieved.[23]

We find the proceedings both free from error and any vitiating constitutional infirmity.

Affirmed.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, HARGRAVE, JJ., concur.

---

**19.** Since no demonstrable attempt was made by the Father to secure testimony by deposition, we need not reach the issue of whether under *Boddie v. Connecticut,* supra note 5, the state would have been subject to liability for the costs of deposition on the theory that the Father was seeking to litigate a matter of family status in the tribunal of first instance and that without the aid of deposition testimony his involuntary absence from the trial court would impair a fair trial of the issues.

**20.** *Boddie v. Connecticut,* supra note 5.

**21.** The Sixth Amendment's right of confrontation applies to criminal cases. There is no similar right in a civil trial. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 [1968]; *Kiddie v. Kiddie,* Okl., 563 P.2d 139, 141 [1977].

**22.** *Ajax Contractors, Inc. v. Myatt,* Okl., 424 P.2d 30, 35 [1967]; *Price v. Price,* Okl., 471 P.2d 894, 895–896 [1970]; *McGhee v. McAllister,* Okl., 474 P.2d 940, 941 [1970].

**23.** *Trapp v. Board of Com'rs of Okmulgee County* et al., 79 Okl. 214, 192 P. 566 [1920]; *Ogle v. Ogle,* Okl., 517 P.2d 797, 799 [1973].

BARNES, J., concurring in part, dissenting in part.

SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, concurring in part, dissenting in part:

I concur in the judgment of the Court. This appellant was denied no federal or state constitutional rights in these proceedings. I have serious reservations concerning the dicta in the majority opinion, however, and I must dissent generally to adopting any "rule" on transcripts in this action and specifically to that "rule" which the majority adopts.

The issue of an indigent parent's right to a free transcript of a proceeding terminating his or her parental rights is *NOT* before us. Appellant did *NOT* request a transcript from that hearing. He requested a transcript only of the initial proceeding to determine whether his children were dependent and neglected and where their temporary custody should be placed. That request was denied for his failure to comply with existing rules of appellate procedure. He made no request for a transcript of the subsequent proceeding to terminate his parental rights.

The Court's attempt to answer a question which is not at issue is inappropriate and the answer is dicta. We respectfully submit that the answer is also wrong.

Inasmuch as the majority has decided to pronounce in this case a "rule" on cost free transcripts for indigent parents appealing from adverse judgments in termination of parental rights proceedings, I will discuss here why that rule is constitutionally defective.

The majority's analysis of which rights must be afforded an indigent parent is based on a simplistic division of "civil" versus "criminal" actions. The majority reasons that criminal defendants are entitled to many protections and civil litigants, not so many. From this starting point, the majority easily concludes that because this is a "civil" action, an indigent parent can be forced to bear burdens which cannot constitutionally rest on a criminal defendant seeking a transcript without cost.

This analysis is superficial and leads the majority to an erroneous result. As the Supreme Court of the United States has advised us on numerous occasions, labels are not important. It is the substance of the rights in jeopardy which we must examine, not the label which a State places upon its conduct or its statute.[1] Termination of parental rights is not the same thing as personal injury litigation or an action on an overdue account, where a private litigant battles out private disputes against his "non-public adversary." The majority's refusal to recognize that difference here will lead to innumerable problems in the future for families, as well as our courts.

Unlike the majority, I find the constitutional "landmarks" are more than adequate to guide us to a correct resolution of the question.

Before proceeding to that point however, I find it necessary to discuss certain federal decisions concerning transcripts for indigent criminal defendants. The discussion of same by the majority is so extremely abbreviated that some may be unable to glean the importance of those rights at issue here which the majority denies to future appealing indigent parents.

## I.

*Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055 (1956), was the Court's first free transcript case. In holding that both due process and equal protection were violated when indigent defendants were denied cost free transcripts which would allow them to obtain full appellate review of nonconstitutional errors, the Court established the now familiar principle that "[t]here can be no equal justice

---

1. See, e. g., *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Giacco v. State of Pennsylvania*,

382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966); *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961).

where the kind of trial a man gets depends on the amount of money he has." *351 U.S. at 19, 76 S.Ct. at 591.* "Destitute defendants" the Court held, "must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *351 U.S. at 19, 76 S.Ct. at 591.*

The principle of *Griffin* has been steadily and consistently applied by the Court to protect the rights of the poor. It has been applied to right to counsel,[2] and filing fees,[3] as well as numerous other transcript cases.[4]

The transcript progeny of *Griffin* make clear the following points which are relevant to the issue decided by the majority opinion:

1. A state need not furnish a complete verbatim transcript in every case but "[i]n all cases the duty of the state is to provide the indigent *as adequate and effective* an appellate review as that given appellants with funds." *Draper v. Washington, supra, 372 U.S. 487, 83 S.Ct. 774.* (Emphasis added)

2. "In terms of a trial record, the State must afford the indigent a 'record of sufficient completeness' to permit proper consideration of [his] claims." *Draper, 372 U.S. at 499, 83 S.Ct. at (quoting Coppedge v. United States, 369 U.S. 438, 446, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962)).*

3. "Alternative methods of reporting trial proceedings are permissible *if* they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." *Draper, 372 U.S. 495, 83 S.Ct. at 779.* (Emphasis added)

4. The defendant *is not required* to make a showing of need tailored to the facts of a particular case. The value of a transcript is recognized. See, *Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).*

5. "We emphasize, however, that the State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way. Moreover, where the grounds of appeal, * * * make out a colorable need for a complete transcript, *the burden is on the state* to show that only a portion of the transcript or an 'alternative' will suffice for an effective appeal on those grounds." *Mayer v. City of Chicago, 404 U.S. 189, 195–196, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971).* (Emphasis added)

6. The Constitution tolerates no distinction between felony and nonfelony offenses. In *Williams v. Oklahoma City, supra,* the Court rejected an argument "that an indigent person, convicted for a violation of a city ordinance, quasi criminal in nature, and often referred to as a petty offense, is [not] entitled to a case-made or transcript at city expense in order to perfect an appeal." *395 U.S. at 459, 89 S.Ct. at 1819.*

7. Likewise, the differences in sentences that may be imposed do not lessen the invidiousness of discrimination against an indigent. Where confinement is not an issue and payment of a fine is the only punishment for violation of a nonfelony city ordinance, *Griffin* applies and the State's fiscal interest is "irrelevant". The Court explained in *Mayer* that is because:

"*Griffin* does not represent a balance between the needs of the accused and the interests of society; its principle is a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way. The invidiousness of the discrimination that exists when criminal procedures are made

---

2. *Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).*

3. *Burns v. Ohio, 360 U.S. 352, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); Smith v. Bennett, supra, Note 1.*

4. *See, e. g., Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).*

available only to those who can pay is not erased by any differences in the sentences that may be imposed." *404 at 196–197, 92 S.Ct. at 416.*

It should be of great interest to know that the defendant in *Mayer* was sentenced to pay two $250 fines.

The majority's summary of *Britt v. North Carolina, supra,* as supporting the notion that "it is not error to deny a cost-free transcript in a criminal prosecution when the availability of an adequate alternative has been shown" misapprehends the point of that decision and overlooks the fact that it was explicitly decided upon its unique factual situation. The transcript sought there was of petitioner's first trial which ended in a mistrial. The following "narrow circumstances of this case," *404 U.S. 228, 92 S.Ct. 431,* led the Court to decide that *Griffin* did not require furnishing a complete transcript before the second trial: both trials took place in a small town, before the same judge, with the same counsel and court reporter, and if counsel had requested it, the reporter would have read him his notes of the mistrial at any time. Although holding no error in rejecting the claim under these circumstances, and where petitioner had conceded availability of an informal alternative "substantially equivalent" to a transcript, the Court emphasized again that:

> "Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, *without requiring a showing of need* tailored to the facts of the particular case." *404 U.S. 228, 92 S.Ct. 434.* And that "[a] *defendant* who claims the right to a free transcript *does not,* under our cases, *bear the burden of proving inadequate such alternatives* as may be suggested by the State or conjured up by a court in hindsight." *404 U.S. 230, 92 S.Ct. 435.* (Emphasis added)

There is no merit to the majority's position that the Supreme Court has given us no "fixed landmarks" which guide our application of transcript principles to an appeal from a judgment terminating parental rights.

## II

*Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113,* involved indigent *plaintiffs* seeking access to divorce courts without payments of costs. In deciding that Connecticut's refusal to admit the impoverished plaintiffs to its courts was a denial of due process, the Supreme Court repeatedly emphasized two points: (1) The fundamental importance of family relationship interests under our Constitution, and (2) The State's monopolization of the means for dissolution of the marriage relationship. Parties to a marriage cannot divorce themselves. Because of this, the Court concluded that the resort of the plaintiffs to the judicial process was "no more voluntary in a realistic sense than that of the *defendant* called upon to defend his interests in court. For both groups, this process is not only the paramount dispute-settlement technique, but, in fact, the only available one." (Emphasis added) It was in view of this that the Court found the issues "properly to be resolved in light of the principles enunciated in our due process decisions that delimit rights of defendants compelled to litigate their differences in the judicial forum." 401 U.S. 376, 377, 91 S.Ct. 785.

Of especial significance to the question the majority seeks to answer here is the fact that *Boddie* was decided under the rationale of *Griffin v. Illinois, supra,* the watershed of transcript cases. The Court stated:

> "We are thus left to evaluate the State's asserted interest in its fee and cost requirements as a mechanism of resource allocation or cost recoupment. Such a justification was offered and rejected in *Griffin v. Illinois.* * * * In *Griffin* it was the requirement of a transcript beyond the means of the indigent that blocked access to the judicial process. While in *Griffin* the transcript could be waived as a convenient but not necessary predicate to court access, here the State invariably imposes the costs as a measure of allocating its judicial resources. Surely, then, the rationale of *Griffin* covers this case." At 382–383, 91 S.Ct. at 788.

Let us examine then the nature of the rights at issue and the nature and amount of governmental involvement in an action to terminate parental rights.

Placed in jeopardy by the State of Oklahoma are the biological and emotional ties of parent and child. Clearly these interests involve fundamental constitutional rights.[5]

The interests of a parent in the companionship, care, custody and management of his or her children must "come to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic interests." (citations omitted) *Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551.* The "liberty interest in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights, as they have been understood in 'this Nation's history and tradition'." (citations omitted) *Smith v. Organization of Foster Families, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14.*[6]

The governmental involvement in termination proceedings far exceeds that which exists in marriage regulation and dissolution.[7] First, of course, the State does not involuntarily divorce people; at least one partner to the marriage must affirmatively seek such relief.

The State does, on the other hand, prosecute termination actions, sometimes involuntarily terminating parental rights against the wishes of both parents and children. There may be no other proceeding where the governmental involvement, both qualitatively and quantitatively, is so great; for in termination actions the State is involved at all stages and on all sides. In any termination action the role of the State (separate and apart from the judicial function) may include any or all of the following: investigation of the family; initiation of the petition; temporary custodial care and/or other services for the children; educational, health or other services for the family; prosecution of the action; separate representation of the parents and/or children; defense on appeal; custodial care of the children; adoption investigation; and representation at adoption proceedings. This list is not meant to be exhaustive, only illustrative.

The difference between those actions which involve fundamental rights of marriage and family subject to great governmental control and those actions which involve lesser interests with fewer governmental controls, has been consistently recognized by the Supreme Court.

In *United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973),* the Court discussed at length the comparison between the government's role in marriage regulation and in private commercial relation-

---

**5.** See, e. g., *Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Cleveland Bd. of Education v. LeFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).*

**6.** The majority's reliance on *Smith* as somehow supporting its puzzling position that "the full shield of safeguards" does not apply to "parental rights' litigation" is misleading. *Smith* was not an action concerning parental rights, but rather rights of foster parents whose relation-

ships with children had its source in contractual arrangements with the State. One of the major points of *Smith* is that the interest of such a foster parent is not as great as the interest of a parent. "Whatever liberty interest might otherwise exist in the foster family as an institution, that interest must be substantially attenuated where the proposed removal from the foster family is to return the child to his natural parents." *97 S.Ct. at 2111.*

**7.** As is occasionally the case, this termination proceeding was initiated by private individuals rather than an employee of a state agency. The majority implies that this fact somehow changes the nature of the proceeding and lessens the governmental involvement in the involuntary cessation of the family relationship. Termination of parental rights is, of course, state action whether the initiating party is public or private.

ships, and held that due process was not denied an indigent when filing fees were charged as a condition to obtaining a discharge in bankruptcy. The Court found that *Boddie* did not control as that denial to the judicial forum had touched directly on "the marital relationship and on associational interests . . . of that relationship", whereas being relieved of debt burdens does not rise to the same constitutional level. Neither does governmental control reach the level of exclusivity in private commercial relationships that it does in marriage regulation; private negotiation is possible as is the expiration of statutes of limitations. For equal protection purposes, bankruptcy legislation falls into the area of economics and social welfare, requiring only a rational justification rather than the compelling governmental interest required before marriage—a fundamental interest—may be regulated.

The lesser constitutional significance of economic and social welfare interests as compared to the more fundamental interests of marriage was again recognized by the Supreme Court in *Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973)*, where the Court held that the equal protection clause is not violated by a statutory appellate filing fee for an adverse welfare decision, although special rights to appeal in forma pauperis are given in criminal areas, civil cases that result in loss of liberty and termination of parental rights. The Court found *Kras*, not *Boddie*, controlled and that the fee was rationally justified and not arbitrary or capricious.

Given the fundamental rights involved in a termination proceeding and the overwhelming governmental involvement, it is erroneous for the majority to place on indigent appealing parents the burdens of particularizing their need for transcripts and proving that alternatives are not available.

These are not acceptable burdens in a proceeding which threatens rights of such magnitude. These were unacceptable burdens in *Mayer* where the defendant faced only payment of two $250 fines.

Surely no one believes that our Constitution offers fewer protections against governmental intrusion to parents and children than to individuals paying a municipal fine.

The appellant was denied no substantial rights. He was given every opportunity for fair and just hearing and consideration of his defense. He received the full panoply of procedural due process protections,[8] and there is no reason to address questions not raised by this appeal. I have strong misgivings about the posture the Court assumes in doing so.

I am authorized to state that Justice Doolin joins with me in the views expressed herein.

---

8. *Matter of Chad S., Okl., 580 P.2d 983 (1978).*